846 F.2d 70
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C-Z FARM, INC., a corporation, d/b/a Commonwealth Park,
Plaintiff-Appellant,
v.
AMERICAN HORSE SHOWS ASSOCIATION, a corporation, Defendant-Appellee.
 No. 87-3628.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1988.
Decided April 13, 1988.
 
 Terence J. Lynam (Julian B. Heron, Jr., Mark D. Nozette, Edward B. MacMahon, Jr., Heron, Burchette, Ruckert & Rothwell on brief) for appellant.
 Thomas F. Cullen, Jr. (Joe Sims; Peri N. Nash, Kathryn M. Fenton, Jones, Day, Reavis & Pogue on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff C-Z Farm, Inc. (C-Z Farm) sued defendant American Horse Show Association (AHSA), claiming that AHSA breached its membership contract with C-Z Farm and violated federal antitrust laws by denying valuable "recognized" status to a horse show C-Z Farm had scheduled for a weekend in April of 1987.[1] The district court dismissed C-Z Farm's antitrust claims and entered judgment for AHSA on C-Z Farm's remaining claims. We perceive no merit in C-Z Farm's appeal, and accordingly we affirm.
 
 I.
 
 2
 Defendant AHSA is a New York corporation whose membership is comprised of recognized horse shows and individual members. Its function includes the assignment of dates to all AHSA-recognized horse shows in the United States. AHSA rules provide that no two AHSA-recognized horse shows of a certain kind can be held within 250 miles of each other on a given day. AHSA rules also provide a procedure by which an AHSA member, which has held a recognized show in one year, may obtain recognition for the a comparable date and the same location in a subsequent year. AHSA Rule I, Part I, Sec. 2, provides in part:
 
 
 3
 With respect to established Recognized Shows, in subsequent years comparable dates will be protected provided that applications for January, February and March show dates in the following year are received in the Association's office by April 15 and applications for April through December show dates in the following year are received in the Association's office by May 15. A fee of $75 will be imposed if applications for established competitions are received after the aforementioned dates.
 
 
 4
 Sixty days must elapse between the date of application and the actual holding of a Regular Member Show or Dressage Competition, thirty days [for] a Local Member Show or Driving Event and ninety days for a Combined Training Event.
 
 
 5
 C-Z Farm submitted an application by May 15, 1986, for a horse show to be held on a weekend in April of 1987. Virginia State Horse Show filed an application in August of 1986 for a horse show on the same weekend in April of 1987. The parties agree that the Virginia State Horse Show had held a recognized show in April of 1986 with 250 miles of C-Z Farm's intended site, and that AHSA's 250-mile rule prevented both proposed horse shows from receiving AHSA recognition. Fundamentally, C-Z Farm's complaint is that AHSA should have granted C-Z Farm recognized status and should not have protected Virginia State Horse Show's recognized status because the Virginia State Horse Show's application was untimely under AHSA Rule I, Part I, Sec. 2, supra.
 
 
 6
 In accordance with AHSA constitutional procedures, C-Z Farm protested the decision to AHSA's Executive Vice President. The protest was denied, and C-Z's appeal to the Executive Committee of the AHSA's Board of Directors was also denied.
 
 II.
 
 7
 Plaintiff pleaded state law claims of breach of contract, breach of fiduciary duty, and arbitrary and capricious action by a New York professional corporation. The decision of the executive committee of the AHSA was final by the terms of both the AHSA horse show application C-Z Farm submitted and Rule I, Part I, Sec. 2, upon which C-Z Farm relies. In the absence of evidence of fraud or corruption on the part of the executive committee, AHSA's interpretation and application of its rules is not reviewable in federal district court. No evidence of fraud or corruption was adduced.
 
 III.
 
 8
 Even if plaintiff's breach of contract claim is capable of review in federal district court, the district court did not clearly err in finding that Virginia State Horse Show's application was not untimely. Defendant AHSA argues that the rule would have guaranteed Virginia State Horse Show protected status if it had applied sufficiently early, but the rule does not clearly preclude conferral of protected status to later applicants. The district court thus did not clearly err in finding AHSA Rule I, Part I, Sec. 2 sufficiently ambiguous as to a previously recognized horse show's deadline for requesting recognized status and properly admitted testimony of AHSA's past practice in protecting previously recognized shows. The district court's finding that AHSA had in the past extended protected status to applications received after the dates set forth in the rule is not clearly erroneous and adequately supports its entry of judgment for AHSA on C-Z Farm's breach of contract and other state law claims.
 
 IV.
 
 9
 Finally, we hold that the district court did not err in dismissing C-Z Farm's claims under sections one and two of the Sherman Act, 15 U.S.C. Secs. 1, 2, and the anti-monopoly provision of Virginia state law, Va. Code Sec. 59.1-9.6 (1987), for failure to support its allegation of anticompetitive effect. C-Z Farm did not properly allege an agreement in restraint of trade, and its monopolization claim under section 2 of the Sherman Act did not state a proper claim for a refusal to deal with respect to an essential facility. Absent an antitrust challenge to AHSA's 250-mile rule or AHSA's protection of previously recognized horse shows, the gravamen of C-Z Farm's Sherman Act claims is not that an impairment of the process of competition gave rise to an antitrust injury, but simply that it did not prevail in its competition with Virginia State Horse Show for recognized status.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 "Recognized" horse shows enjoy privileges not available to other shows, including (1) a position on the AHSA schedule of show dates, (2) the right to hold International Competitions, and (3) the accumulation by competing horses of points toward both certain AHSA awards and qualification in certain prestigious horse shows